IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIGUEL GAMA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 C 3449 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| THOMAS DART, Sheriff of Cook County, | ) | |
| COOK COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Miguel Gama has sued defendants Thomas Dart, the Sheriff of Cook County, Illinois, and Cook County, seeking damages for injuries he allegedly sustained while he was a pretrial detainee at Cook County Jail ("CCJ"). Although inartfully drafted, the complaint apparently alleges two separate claims, one for subjecting plaintiff to unconstitutional conditions of confinement, and another for using excessive force. Dart is sued in both his official and individual capacities.[1] Cook County is sued only under Carver v. Sheriff of La Salle County, 324 F.3d 947 (7th Cir. 2003). Defendants have moved to dismiss the entire complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[2] For the reasons described below, the motion is granted in part and denied in part.

---

[1] Although not clear from the complaint, plaintiff's brief reveals that he is asserting individual liability against Dart on the excessive force claim only.

[2] Defendants also moved to stay the instant proceedings pending the Seventh Circuit's decision in Mays v. Dart, No. 20-1792. The Seventh Circuit issued its decision on September 8, 2020. Mays v. Dart, 974 F.3d 810 (7th Cir. 2020). Consequently, the motion to stay [Doc. 11] is denied as moot.

**FACTUAL ALLEGATIONS**

Plaintiff's complaint alleges the following facts, which are presumed true for purposes of evaluating the motion to dismiss. In a 2017 incident unrelated to the instant case, plaintiff received a gunshot wound, resulting in a portion of his intestine protruding from his chest. He also developed a serious bedsore. He is "medically fragile."

Despite those chronic injuries, he was arrested for new criminal offenses and processed into CCJ on July 12, 2019. He was housed in Tier 3C of the Residential Treatment Unit ("RTU"), which is a dorm-style living unit that holds approximately 38 detainees and provides a heightened level of medical care. Tier 3C is a "conglomerate housing setting" with the inmates sharing showers, bathrooms, and a dayroom. Plaintiff was assigned to this unit because of his serious medical conditions, including a need for daily changes of a fecal collection bag.

According to plaintiff, since January 2020 defendants have been aware that the novel coronavirus poses a significant risk to the health of inmates at the jail, and of the need to adhere to the Centers for Disease Control and Prevention's (CDC) guidelines for preventing the spread of the virus. Despite this knowledge, defendants allegedly failed to take reasonable measures to protect the medically fragile inmates housed in Tier 3C from contracting the virus. In particular, plaintiff alleges that defendants kept the inmates housed in large group settings where social distancing was impossible, failed to distribute facemasks, and failed to provide readily available disinfectants or soap.

By mid-March several Tier 3C inmates had developed symptoms of coronavirus. Despite the obvious signs that inmates in Tier 3C were ill, defendants failed to take reasonable actions to protect plaintiff from the virus. On March 20, 2020, plaintiff was among a large

group of inmates taken to the Skokie courthouse. At the courthouse he was held in a bullpen with approximately 8 other inmates. After court, plaintiff was returned to Tier 3C, which was placed on lock-down. Five detainees had been taken to the hospital because of the virus. As a result of the lockdown correctional officers stopped entering the unit and the nursing staff stopped performing wound care. In lieu of nursing care for his fecal collector bag, plaintiff was provided supplies to change the bag on his own, which he was required to do in front of the entire dorm. While changing his bag, plaintiff ripped a portion of his intestine. The following day plaintiff became sick with virus symptoms and was taken to the hospital.

At the hospital plaintiff had one hand and one foot shackled to his bed. According to plaintiff this was done pursuant to Dart's instructions that whenever an inmate is hospitalized outside the jailed the inmate should be so restrained. Plaintiff alleges that Dart has personal knowledge of the widespread practice of correctional offices to shackle seriously ill inmates to their hospital beds.

Plaintiff was released from the hospital on April 11, 2020. He claims that shackling him was excessive and caused gratuitous pain and reopened his bedsore.

## DISCUSSION

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The purpose of such a motion is to test the sufficiency of the complaint, not to judge the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. McMillan v. Collection Professionals Inc., 455 F.3d 754, 758 (7th Cir. 2006). The complaint must plead sufficient facts to plausibly suggest that plaintiff has a right to

3

relief and raise that possibility above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Plaintiff's first claim is that he was subjected to unconstitutional conditions of confinement that led to his contracting the coronavirus. This claim is governed by an objective reasonableness standard. See McCann v. Ogle County, Ill., 909 F.3d 881, 886 (7th Cir. 2018). To state a claim plaintiff must allege that: 1) defendants "acted purposefully, knowingly, or perhaps even recklessly"; and 2) defendants' conduct was objectively unreasonable. Id. (citing Miranda v. Cty. of Lake, 900 F.3d 335, 353-54 (7th Cir. 2018). Whether a defendant's conduct was objectively unreasonable "turns on the facts and circumstances of each particular case," and the court must consider the "legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (internal quotations omitted). The objective standard protects officers who act in good faith. "We recognize that running a prison is an ordinately difficult undertaking, and that safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." Id. at 399 (internal quotations omitted).

In the instant case, plaintiff has alleged that defendants failed to take reasonable actions to prevent the most medically susceptible inmates from contracting the virus, including failing to provide disinfectant, soap, and facemasks. He also alleges that defendants failed to regularly sanitize common areas such as bathrooms and showers. Defendants argues that these

allegations are insufficient to suggest a constitutional violation, and simply present plaintiff's wish list of what he thinks should have been done. In support of their motion, defendants' argue that the court should take judicial notice of Judge Kennelly's findings in <u>Mays</u> that defendants had taken significant steps to stem the spread of the virus, and that he was satisfied that Sheriff Dart and his staff had acted in good faith, with the goal of protecting people placed in his custody. <u>Mays v. Dart</u>, 456 F.Supp.3d 966, 1002, (N.D. Ill 2020).

The court rejects defendants' position that it should rely on Judge Kennelly's findings in <u>Mays</u>, which he made when ruling on a motion for preliminary relief and which, by definition, are not final. Moreover, the issues in the instant case are far more limited than in <u>Mays.</u> The instant case involves only whether the defendants' actions to protect the most medically vulnerable inmates were constitutionally sufficient. It is entirely plausible that the actions taken may have been reasonable to protect the general population but insufficient to protect the medically vulnerable. Consequently, the court denies defendants' motion to dismiss.

Plaintiff's second claim is that he was subjected to excessive force when he was shackled to his hospital bed. He alleges that this was done pursuant to a widespread practice, of which Dart was aware, of shackling seriously ill inmates at outlying hospitals. He alleges that "nearly all inmates hospitalized for coronavirus are shackled to their bed." He claims that the continuous restraint of his hand and foot caused significant pain and resulted in the reopening of a bedsore. He brings this claim against Sheriff Dart in both his official and individual capacities.

Defendants move to dismiss this claim arguing the there is nothing objectively unreasonable with a policy of shackling detainees while they are at the hospital. See <u>May v.</u>

5

Sheahan 226 F.3d 876, 884 (7th Cir. 2000) ("Certainly, shackling all hospital detainees reduces the risk of a breach of security and thus furthers a legitimate non-punitive government purpose."). Plaintiff does not disagree with the notion that the shackling policy is rationally related to a non-punitive purpose. He simply argues that the policy may still violate due process if applied in a manner that is excessive in relation to its escape-prevention purpose. For example, in May, the court stated, "it is hard to see how shackling an AIDS patient to his or her bed around the clock, despite the presence of an armed guard, is an appropriate policy for carrying out this purpose. Such a policy is plainly excessive in the absence of any indication that the detainee poses some sort of security risk." Id.

The problem with plaintiff's argument, as defendants point out, is that the complaint contains no factual allegations to suggest that he was not a security risk, or that there was an armed guard present during his hospital stay. The complaint does not allege that he was not ambulatory or otherwise incapable of simply walking out of his hospital room. And, because he had the coronavirus he was an immediate danger to anyone with whom he came into contact. Without any such allegation the court cannot infer that shackling plaintiff was objectively unreasonable.

Recognizing the complaint's deficiencies, plaintiff attempts to supplement his complaint in his response to the motion by indicating that he has nerve damage in his leg and cannot ambulate without a cane. He also indicates that "it was challenging for [him] to breath[sic] and he was very weak," that there were at least two armed guards watching him at all times, and that on at least two separate occasions the nursing staff requested the guards to remove the restraints while they treated plaintiff. The guards refused.

None of these facts were alleged in the complaint, and courts generally look only to the matters within the four corners of the complaint when ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Bruno v. Global Experience Specialists, Inc., 2020 WL 5253139 at *3 (N.D. Ill. Sept. 3, 2020) (citing Burke v. 401 N. Wabash Venture, L.L.C., 714 F.3d 501, 506 (7th Cir. 2013)).

There is an exception to the four corner rule. In Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012), the court noted that a plaintiff opposing a Rule 12(b)(6) motion may elaborate on his factual allegations "so long as the new elaborations are consistent with the pleadings." Plaintiff relies on Geinosky to present the new facts, but most of the new facts, such as his need for a cane to ambulate and the presence of the two armed officers, are not "elaborations" consistent with facts already alleged, but are new factual allegations that should have been presented in an amended complaint. The elaboration that he had difficulty breathing and that he was very weak is consistent, however, with his allegation that he had coronavirus, and that allegation is sufficient to infer that he was not a security risk and did not require shackling. He also alleges that the shackling caused him unnecessary pain and resulted in the reopening of a bedsore. Consequently, the court concludes that plaintiff states a claim that he was subjected to unconstitutional conditions of confinement.

The court agrees with defendants, however, that the complaint fails to state a claim against Sheriff Dart in his individual capacity. To be liable under 42 U.S.C. § 1983, an individual defendant must have caused or participated in the constitutional violation. Pepper v. Village of Oak Park, 430 F.3d 805, 810 (7th Cir. 2005). Supervisory officials cannot be held liable for the conduct of their subordinates based on respondeat superior. Perkins v. Lawson,

7

312 F.3d 872, 875 (7th Cir. 2002). The complaint contains no allegation against Dart except that he was aware of the widespread policy of shackling detainees while at the hospital. Those allegations are sufficient to support a claim against Dart in his official capacity under Monell v. Department of Social Services, 436 U.S. 658, 692 (1978). But the policy is not inherently unconstitutional, and thus to hold Dart liable for how it was applied to plaintiff requires allegations that Dart personally participated in that application. There are no such allegations. Consequently, the court grants defendants' motion to dismiss the individual claims against Dart.

## CONCLUSION

For the reasons described above, defendants' motion to dismiss [Doc. 10] is granted as to the individual claim against Sheriff Dart and denied in all other respects. Defendants motion to stay [Doc. 11] is denied as moot. Defendants are directed to answer the complaint by December 21, 2020. The parties are directed to file a joint status report on the court's form by January 4, 2021.

**ENTER:** **November 19, 2020**

_____
**Robert W. Gettleman
United States District Judge**